HAROLD B. SHERWIN and Others, Plaintiffs, *v.* BENEVOLENT AND PROTECTIVE ORDER OF ELKS, BROOKLYN LODGE No. 22, and Others, Defendants.

Supreme Court, Kings County, August 2, 1930.

*Herman Mendes*, for Duparquet, Huot & Monense.

*E. A. Sherpick* and *James J. Ryan*, for Thomas J. Murphy.

*John G. Miller*, for the Art Metal Construction Company.

*Harry N. French* and *William Merkle*, for Mark C. Tredennick.

*Murray Becker* and *Samuel L. Stolitzky*, for Benevolent and Protective Order of Elks, Brooklyn Lodge No. 22.

*Henry M. Bellinger*, for the Manufacturers' Trust Company.

MAY, J. The Elks club house was erected as a permanent home of the Brooklyn lodge, which, in addition to being a fraternal order, offered its members social attractions, and which equipped a part of the club house for sleeping quarters, gymnasium purposes, library, and restaurant uses. In addition, it offered facilities for public and semi-public functions, the use of the kitchen and restaurant being coupled therewith. The latter use of the property very evidently was devised with the object, not only of making the club house more attractive to its members and their friends and to the public at large, but to yield an income in addition to that from the regular membership, which income was found necessary to carry on the affairs of the institution. It may safely be said that the restaurant facilities are one of the most important aspects of the club house. The kitchen was designed to meet these requirements, and the equipment thereof was complete, modern, and in many instances specially designed. The entire equipment now in question was installed in accordance with a specific plan which was part of architecturally approved plans of the club building, upon which were indicated the measurements of the various items of equipment, the type of each, and the exact location where each was to be placed or installed. In my opinion, the kitchen can no more be disassociated from the club house as it was designed than can its lodge rooms. An inspection of the kitchen discloses that, in the main, the fixtures in question are by one means or another directly attached to the structure itself, though many such fixtures can be removed without substantial damage to the building. It is true that, in the case of some twenty-four tables, butcher benches and blocks, there was no direct attachment or fastening, but the circumstances attending their installation, including the fact that they were especially constructed to fit appropriate spaces, amounted to a constructive annexation of them to the realty. (*Williams* v. *London*, 61 Misc. 494; *Union*

*Stove Works* v. *Klingman*, 20 App. Div. 449; affd., 164 N. Y. 589.) The entire situation, thus, is most convincing that it was the intention of the parties that these fixtures were to remain as permanent equipment. Without such equipment the kitchen and restaurant could not adequately be conducted. Before the installation of the kitchen equipment the building was an incomplete structure. After it was installed it was a complete club house. To conclude that it was the intention of the parties, merely because some of the equipment could readily be removed without damage, and, in some instances like the tables, very easily be removed, that such fixtures were to retain their character as chattels, would be running directly in opposition to common sense and business judgment. In *Wahle-Phillips Co.* v. *Fitzgerald* (225 N. Y. 137), electric lighting fixtures used in equipping an office building, though technically but personal property, were nevertheless considered a "permanent improvement" of the realty, and the materialmen entitled to a lien. It is suggested by defendants that the case cited is to be restricted in application to office buildings and apartment houses because as to such the lighting fixtures, it is said, customarily pass on lease or sale. The opinion of the Court of Appeals, however, did not rest upon any such custom, but specifically upon judicial notice, and the present court can take judicial notice that a modern club house includes kitchen equipment, passing upon sale or lease of the building from one organization to another.

The remaining and subordinate questions as to whether the lienor shall have judgment both for a lien and personal judgment against the principal contractor, and whether he may have interest from the several dates when the supplies were certified to by the architect, are decided in favor of the lienor.

Motion for an extra allowance is denied.