LINCOLN NATIONAL BANK, Plaintiff, *v.* JOHN PEIRCE CO. et al., Defendants.

(Supreme Court, New York Special Term, January, 1917.)

Lien Law — what is sufficient statement under section 15 of — meaning of " substance " — assignment of building contract — notice of lien — when notice of lien fatally defective — foreclosure of lien — lis pendens — who entitled to preference over all other lienors — actions — title — who is a materialman — statutes — corporations — what constitutes common-law lien — who entitled to enforce lien.

　　While the ordinary meaning of the word " substance " when used in respect to a contract is its important parts the word is susceptible of different significations according to circumstances, and, where interpretation becomes necessary, must be taken to have an exclusive or inclusive meaning according to the subject to which it relates.

　　The only conceivable purpose of the requirement of section 15 of the Lien Law, that upon the assignment of a building contract it or a copy or " a statement containing the substance

thereof " shall be filed, is to give notice to all interested persons that an assignment of that particular contract or moneys due thereunder or an order upon the owner for the payment of money on account thereof has been made or issued.

. The object of said section 15 is accomplished when there is filed such a description of the contract as clearly identifies it including the character of the work involved and the location of the property. Such an interpretation of the section accords with the spirit of section 23 of the Lien Law which declares that it be liberally construed and that a " substantial compliance with its several provisions shall be sufficient for the validity of a lien."

An assignment of a building contract which sets forth the date of the contract, the parties thereto and that it is " for the delivery of material, labor performed and the erection complete of the Mail Service & Loft Building, 45th and 46th Street, Lexington Avenue and Depew Place, Grand Central Terminal," is a sufficient statement of the contract under section 15 of the Lien Law, as its clear meaning is that the assignor was the general contractor for the " erection complete " of the building and the furnishing of all material and labor necessary therefor.

A provision of the building contract that changes therein which increased the amount of the work were not to be made unless covered by a " supplemental " written agreement is the equivalent of the ordinary case of extra work, and the changes when made are to be taken as having been made in pursuance of the original contract.

Where in an action to foreclose a lien created by the Lien Law all other lienors were made parties defendant and the answer of each, setting up his lien and praying the enforcement thereof, was served on his codefendants, the action becomes a plenary one in which the rights of all parties to the fund are to be determined, and the filing of a *lis pendens* by the earliest lienor obviates the necessity of any further *lis pendens* by subsequent lienors.

While apparently section 17 of the Lien Law, which declares that " If a lienor is made a party defendant in an action to enforce another lien, and the plaintiff or *such* defendant has filed a notice of the pendency of the action within the time prescribed in this section, the lien of such defendant is thereby continued," has particular reference to an action where the only controversy is between one or more defendants and

the plaintiff, yet in case of the consolidation of all pending actions, the statute providing therefor, or where as in the instant case the defendants as between themselves, respectively, in effect become plaintiffs and defendants and each answer praying affirmative relief is to be treated as a complaint, a *lis pendens* filed by the earliest lienor must be held to have been filed by the plaintiff and inures to the benefit of all subsequent lienors who seek to enforce their liens in the present action, as against an objection that it was not one " to enforce another lien " within the meaning of said section 17.

Where in the *lis pendens* the " New York Central & Hudson River Railroad Company" and not the " New York Central Railroad Company" was named as the owner of the property, an objection of misnomer is valueless there being no change in the record title, the new title of the company being that by which the former company had always been popularly known and no one claiming to have been misled.

Under section 2 of the Lien Law one who furnishes materials to a subcontractor is a materialman and, as such, is entitled under section 56 of the Lien Law to a preference over all other lienors, since they are subcontractors.

A mistake in claiming in a notice of lien more than the amount actually due the lienor is not fatal unless made fraudulently, wilfully or intentionally.

A notice of lien stating on its face that the amount claimed is subject to the value of " omitted work," which is not stated, is defective as not stating " either explicitly or by plain inference the value of the agreed price of the labor performed or materials furnished at the time of filing thereof."

Where a notice of lien stated that the general contractor was entitled to a total credit in a certain amount for omitted work and for payment, but fails to state whether all or none of the omitted work was part of the extra work, for which a claim was also made, and the sums credited on account of payments and on account of omitted work are not separately stated, the notice of lien must be held defective on the ground that it is impossible to determine how much, if anything, remains due for the extra work.

The only requirement of section 9(1) of the Lien Law in the case of a foreign corporation is that " its principal place of business within this state " shall be stated in a notice of lien filed by it.

Supreme Court, January, 1917.          [Vol. 98.

A notice of lien filed by an individual doing business under a designated firm name, which does not state his residence but only his business address, is clearly invalid, and a statement in said notice, that "the labor performed and the materials furnished and the agreed price and value thereof" are a certain sum, is fatally defective.

An assignment of a building contract to a bank as security for moneys advanced to the general contractor is in effect a mortgage and as between the parties constitutes a common law lien upon the moneys earned under the building contract, and the assignee upon complying with the provisions of section 15 of the Lien Law becomes a "lienor" within the meaning of section 2 of said statute, and is entitled to enforce its lien thereunder.

Action to foreclose lien created by the Lien Law.

Dittenhoefer, Gerber & James (David Gerber, Irving Dittenhoefer and F. W. Pinner of counsel), for plaintiff.

Solomon C. Whitbeck, for defendant Peele Company.

John J. Pheelan, for defendant Walter Thompson Plastering Company.

Phillips & Avery (H. A. St. George, of counsel), for defendant Levering & Garrigues Company.

Feiner & Maass (Ira Skutch, of counsel), for defendant Black & Boyd Manufacturing Co.

M. B. Field, for defendant Pietrowski & Konop.

Joseph V. Mitchell, for defendant Denton & Company.

Charles A. Brodek, for defendant Baker, Smith & Company.

Sidney G. DeKay, for defendant Pittsburgh Plate Glass Company.

Harry N. French (Hulse & Mayer of counsel), for defendant James McCullagh, Inc.

Edlitz & Hulse, for defendant J. L. Mott.

Phillips, Mahoney & Wagner (Cornelius J. Smyth, of counsel), for defendant Fireproof Products Corporation.

Edward J. Dowling, for defendant Trinity Contracting Company.

Howard H. Williams (F. H. Wells, of counsel), for defendant Standard Plunger Elevator Company.

Anderson, Iselin & Anderson (E. O. Power, of counsel), for defendant J. Livingston & Company.

Atwater & Cruikshank (Edward L. Blackman and Edmond Patten Glover, of counsel), for defendant Henry Bonnard Bronze Company.

Barber, Watson & Gibboney, for defendant Leavitt J. Hunt, trustee in bankruptcy for John Peirce Company.

Albert Francis Hager (David B. Lucky and George W. Study, of counsel), for defendant Otto J. Bloss.

Thomas E. Brown, Jr. (George W. Wickersham, of counsel), for defendant McClintic-Marshall Company.

Robert Godson, for defendant J. L. Keating Co., Inc.

Henry L. Brant, for defendant Otis Elevator Company.

HOTCHKISS, J.   (1) For the reasons stated on the trial the amount owing by the New York Central Railroad Company must be fixed at the sum of $81,712.73, to which interest will be added.   (2) If the decision of this case required me to pass upon the claim of the plaintiff that the acceptance of the assignment by the railroad company and its promise to pay to plaintiff all moneys earned under the contract, on the faith of which engagement plaintiff made its loans to the Peirce Company, was the legal equivalent of an actual payment by the railroad company to plaintiff, or constituted a novation, giving plaintiff title to the moneys superior to claims of subsequent lienors, I should be inclined to hold adversely to the plaintiff's contention. *Harvey* v. *Brewer,* 82 App. Div. 589; affd., 178 N. Y. 5, is clearly distinguishable.   Here there was no positive engagement by the railroad to pay plaintiff any sum whatever.   The promise was to pay if and when money was earned by the Peirce Company.   The case seems to be controlled by *Van Kannel Revolving Door Co.* v. *Astor,* 119 App. Div. 214; *Smith & Co.* v. *Douglas,* 165 id. 707.   See, also, *Standard Sand & Gravel Co.* v. *City of New York,* 172 App. Div. 80.   (3) The objection that plaintiff failed to comply with section 15 of the Lien Law must be overruled.   The ordinary meaning of the word " substance " when used with respect of a contract is its essential or material parts, its important parts.   But the word is susceptible of different significations, according to the circumstances, and, as in all other cases where interpretation becomes necessary, must be taken to have an exclusive or inclusive meaning, according to the subject to which it relates What might be matters of substance as between the contracting parties might be wholly immaterial as between them or either of them and third parties,

depending entirely upon the circumstances. The only conceivable purpose of the provision requiring the contract or a copy or " a statement containing the substance thereof " to be filed is to give notice to all interested persons that an assignment of that particular contract or moneys due thereunder or an order upon the owner for the payment of moneys on account thereof has been made or issued. For the purposes of such notice the consideration and what may be called the operating details of the contract are of no importance. The object of the section is accomplished when there is filed such a description of the contract as clearly identifies it. This necessarily includes the character of the work involved and the location of the property. This interpretation of the section accomplishes everything the legislature intended and is in accord with the spirit of section 23 of the article, which commands that it be liberally construed and that " a substantial compliance with its several provisions shall be sufficient for the validity of a lien." Undoubtedly the " statement " may be contained in the assignment itself. The assignment in question sets forth the following particulars of the contract: Its date; the parties thereto; that it is " for the delivery of material, labor performed and the erection *complete* of the Mail Service & Loft Building, 45th and 46th Street, Lexington Avenue and Depew Place, Grand Central Terminal." To say that this description might cover a contract for the delivery of some material and the performance of some labor, besides the labor of " erecting " the building, as distinguished from a contract to furnish *all* material and the labor and to erect the building, is to analyze the language used too nicely. The question is, What would the words used convey to the ordinary mind? To me the meaning seems clear — that the Peirce Company was

the general contractor for the " erection complete " of the building and the furnishing of all material and labor necessary therefor. The cases of *Barrett* v. *Schaefer, Jr., & Co.,* 162 App. Div. 52; affd., 217 N. Y. 722, and *Smith & Co.* v. *Douglas, supra,* are distinguishable. In each the description of the contract was vague and indefinite in material particulars. In the *Barrett* case, although the parties were named, the date of the contract was not given and the contract was described as one " for the erection of twenty-eight (28) buildings at Pleasantville, New York." Where in Pleasantville was not stated. Whether the buildings were at one location or at twenty-eight locations was left to inference. In the *Smith & Co.* case the parties were named, but the date was omitted, as in the *Barrett* case, and the contract was described as one " for repair work on *a* building now erected on the property of W. H. Douglas, located at Gorey Brook road, North Tarrytown, N. Y." The nature of the repair work, the particular building on the Douglas property or the location of that property on the Gorey Brook road were all omitted. The words of description in the present case are equivalent to those used in the assignments held to be sufficient in *American Hardware Corpn. of N. Y.* v. *Lyttle,* not reported, copy of opinion, Mills, J., furnished by counsel; affd., 154 N. Y. Supp. 1109, and *N. Y. County Nat. Bank* v. *Peckworth,* Lehman, J., N. Y. L. J., July 2, 1914, and in *Wright Ogden Co., Inc.,* v. *Strayer,* per Tierney, J., March 8, 1916. I shall follow the latter cases. (4) The " change orders " are immaterial. Section 4 of the contract provided for changes. Changes which increased the amount of the work were not to be made unless covered by a " supplemental " written agreement. This was the equivalent of the ordinary case of extra work. It is not certain that the changes made were increases,

but, however that may be, when made they are to be taken as having been made in pursuance of the original contract. The objections to the various liens filed by parties defendant are divisible into general and specific objections. The general objections cover the following situations: (1) Where no order was obtained extending the lien and no *lis pendens* herein was filed by the particular lienor; (2) where no order of extension was obtained, but a *lis pendens* was filed by that lienor, and (3) where the New York Central and Hudson River Railroad Company and not the New York Central Railroad Company was named as owner. It is not disputed that McClintic-Marshall Company, James McCullagh, Inc., and Denton Company, whose liens were the first three filed, did severally file notices of *lis pendens*. The objection to the efficacy of all notices of *lis pendens* is put upon the ground that this action is not one " to enforce another lien " within the meaning of section 17. Plaintiff's assignment was to secure it for moneys advanced. In effect it was a mortgage and, as between the parties, it constituted a common-law lien on the fund. *Standard Sand & Gravel Co.* v. *City of New York, supra.*. But, by reason of section 15, it was not enforcible as against the various classes of persons who are entitled to avail themselves of the Mechanics' Lien Act and who filed liens thereunder unless the provisions of section 15 were complied with. When this was done plaintiff was brought expressly within the definition of section 2, which says: " The term ' Lienor ' when used in this chapter, means any person having a lien upon property by virtue of its provisions." *Philbrick & Brother* v. *Florio Co-Operative Assn.,* 137 App. Div. 613, 615; affd., 200 N. Y. 526. The question remains as to whether the *lis pendens* must be filed by the particular lienor or whether a *lis pendens* filed in this action by another lienor at or prior to the

date of the filing of the particular lien is sufficient. The present action, as I have shown, is one to foreclose a lien created by this act. Among the defendants were included all other lienors. Each of these lienor defendants has answered, setting up his lien and praying enforcement thereof. The answer of each defendant was served on his codefendants. The action thus becomes a plenary action in which the rights of all parties to the fund are to be determined. *Mellen* v. *Athens Hotel Co.,* 149 App. Div. 534. It was the privilege of each defendant to answer the allegations of each codefendant who sought affirmative relief. Id. There is authority for holding that the failure of the codefendant so to answer and to set up as a defense the failure to extend the lien or to file a *lis pendens* bars the right to object on that ground. *Romeo* v. *City of Yonkers,* 126 App. Div. 402; *Troy Public Works Co.* v. *City of Yonkers,* 68 Misc. Rep. 372. But however that may be, I am of the opinion that the filing of a *lis pendens* by the earliest lienor obviated the necessity of any further *lis pendens* by subsequent lienors. Speaking of such an action as the present to foreclose a lien, Mr. Justice Scott, writing for a unanimous court in *Mellen* v. *Athens Hotel Co., supra,* (at p. 535) said: " The plain intent of the law is that all controversies arising out of liens filed against the same property shall be determined and disposed of in a single action. *    *    *"
The sole purpose of a *lis pendens* is to give notice of the action, and if one such timely notice has been filed, of what value is a further notice? The words of the section (17) are: " If a lienor is made a party defendant in an action to enforce another lien, and the plaintiff or *such* defendant has filed a notice of the pendency of the action within the time prescribed in this section, the lien of *such* defendant is thereby continued."
Apparently the words have particular reference to an

action where the only controversy is between one or more defendants and the plaintiff, hence the use of the word "such." But the act provides for the consolidation of all pending actions. In such a case, or in a case like the present, where in its original form the action is plenary and the answers of defendants pray affirmative relief and are served on codefendants, they, as between themselves, respectively and in effect become plaintiffs and defendants, and each answer praying affirmative relief is to be treated as a complaint. *Mellen* v. *Athens Hotel Co., supra.* So considered, the *lis pendens* of McClintic-Marshall Company must be held to have been one filed by "the plaintiff" and so to inure to the benefit of all subsequent lienors who seek to enforce their liens herein. The objection of misnomer is valueless. There was no change in the record title; the name of the owner against which the liens were filed had been its corporate name for many years and until the name was changed by virtue of the consolidation of the company with several others shortly before the date of filing the earliest lien. The new title of the company was the title by which the former company had always been popularly known, and nobody claims to have been misled. *Gates & Co., Inc.,* v. *National Fair & Exposition Assn.,* 172 App. Div. 581, 587. Specific objections are made to certain liens as follows: The lien of J. L. Mott Iron Works appears to be valid to the extent of $2,413.74. This company furnished materials only to James McCullagh, Inc., a subcontractor, and under section 2 of the Lien Law is therefore a materialman. As such it is entitled to a preference over all other lienors, since the others are subcontractors. Lien Law, § 56; *Herrmann & Grace* v. *City of New York,* 130 App. Div. 531; affd., on opinion below, 199 N. Y. 600. And see *Jackson* v. *Egan,* 200

N. Y. 498. The notice of lien of James McCullagh, Inc., states that " the labor performed and the materials furnished and the agreed price and value thereof are as follo.ws : Furnishing and installing * * * in accordance with the contract in .writing between the lienor and John Peirce Company of the agreed price and value of $19,250. That in addition * * * the lienor furnished certain extra materials and performed certain extra labor * · * * of the agreed price and value of $2,127.91. That no part of the said sum of $19,250 and $2,127.91 * * * has been paid, except that John Peirce Company is entitled to credit for certain omitted plumbing work and for payments made on account on said contract and extra work amounting in all to $17,120, leaving due and owing the sum of $4,257.91" (1) The plaintiff contends this notice is fatally defective, since the amount claimed to be due is $1,509.15 more than the amount actually due ($2,-748.76). But a mistake in amount is fatal only when made fraudulently, willfully or intentionally. *Ringle* v. *Wallis Iron Works,* 149 N. Y. 439. The cases cited by plaintiff (including *Goodrich* v. *Gillies,* 66 Hun, 422) are cases of intentional misstatement, and upon a retrial (*Goodrich* v. *Gillies*) was decided in favor of the lienor, since it was not shown that the mistake was intentional (82 Hun, 18). (2) It is further contended, however, that while the notice states the agreed price as well as the value of the labor performed and materials furnished at the time of filing the lien was $19,250 plus $2,127.91, it appears upon the face of the notice that this amount is incorrect, since it is subject to the deduction of the value of the " omitted " work. The value of the omitted work is not stated and it can be inferred only that it lies somewhere between nothing and $17,120. The notice therefore does not " state

either explicitly or by plain inference the value or the agreed price of the labor performed or materials furnished at the time of filing thereof," and is for that reason defective. *Finn* v. *Smith*, 186 N. Y. 465. Nor is it possible to segregate the claim for extra work and determine from the statements contained in the notice how much was the value of the extra work or how much, if anything, is owing on account of that work. The statement is that the Peirce Company is entitled to a total credit of $17,120 for omitted work and for payment. It is not stated what, whether all or none, of the omitted work was part of the extra work, nor are the sums credited on account of payments and on account of omitted work separately stated. It is impossible, therefore, to determine how much, if anything, remains due for the extra work. It is urged that the notices of lien filed by the Otis Elevator Company, the Pittsburgh Plate Glass Company and the Standard Plunger Elevator Company, all foreign corporations, do not comply with subdivision 1 of section 9 in that, although they state their respective principal places of business in this state, they fail to state the business address of the corporation in the states in which they were respectively incorporated. I see nothing in this objection. The only requirement of the section in the case of a foreign corporation is that " its principal place of business within this state " be given. The notice of lien of O. J. Bloss, an individual doing business under the firm name or style of the Reliance Architectural Iron Works, is clearly invalid. (1) The notice does not state the residence of the lienor, and (2) the only statement made in compliance with subdivision 4 of section 9 is that " the labor performed and the materials furnished and the agreed price and value thereof are $9,088.04." The lienor contends that it is

22

sufficient to state his business address under the prin-
ciple of *Post & McCord* v. *City of New York,* 86
Misc. Rep. 300, 307; affd., 166 App. Div. 919; but it can-
not be maintained that an individual acquires a sepa-
rate entity, analogous to that of a partnership, by mere
adoption of a business name.   The case cited rested
upon a construction of the wording of section 12 of the
statute so far as it related to partnerships as distin-
guished from individuals.   The statement as to labor
performed and materials furnished is fatally defective.
*Toop* v. *Smith,* 87 App. Div. 241; affd., 181 N. Y. 283.
The lienor contends that his business name, Reliance
Architectural Iron Works, indicates the nature of the
labor performed and materials furnished.   The state-
ment of the contention is a sufficient refutation of its
merit.

Judgment for plaintiff.